# H. G. RAHN v. FIRST NATIONAL BANK OF ROCHESTER.[1]

January 29, 1932.

No. 28,691.

[1]Reported in 240 N. W. 529.

*John G. Priebe,* for appellant.
*Burt W. Eaton,* for respondent.

HOLT, J.

The action is for conversion of a dentist's office outfit. There was a verdict for defendant. Plaintiff's motion for judgment notwithstanding the verdict or a new trial was denied. From the judgment of dismissal entered plaintiff appeals.

The short facts are these: Plaintiff, a dentist, bought a dentist's business and office equipment at Rochester, Minnesota, the last of January, 1929. On that day he made his promissory note to Dr. Sinclair for $1,500, due in one year, and to secure the same gave a chattel mortgage upon all the property owned by him in the office mentioned. This not only included the equipment in the three rooms he occupied, but also one-half of the outfit in the waiting room used jointly by plaintiff and Dr. Miner, another dentist who occupied rooms also opening into the waiting room. Dr. Sinclair assigned the note and mortgage to defendant as collateral security for the payment of his note to defendant for $750 loaned to Sinclair by defendant. Both plaintiff and Dr. Miner rented the offices mentioned. Plaintiff took possession about the first day of February, 1929, and began to practice his profession there. Before May 1, 1929, he concluded to quit his practice and left the city. He paid no rent after May 1, and the lessor notified the mortgagee that the mortgaged property must be taken elsewhere or the rent be paid. The mortgagee claims he made some investigation and found that part of the mortgaged property had been taken away, and imparted this information to defendant. Defendant, claiming default had been made in the conditions of the mortgage in removing part of the mortgaged property, deeming its debt insecure, and fearing

diminution and waste of said property, gave notice of foreclosure of the mortgage by sale on June 29, 1929. The foreclosure is conceded valid in form, but the contention is that no default had occurred and no legal ground existed for foreclosing. Defendant proved that considerable of the mortgaged property had disappeared from the offices mentioned; that all was in danger of being removed; and that it deemed its debt insecure. Plaintiff contended that what was not there at the foreclosure were certain tools he brought to Rochester and not covered by the mortgage. He also testified to the ample value of the security. The court submitted to the jury the question whether some of the property. mortgaged had been taken away and whether the defendant in good faith deemed its debt insecure, ruling that unless defendant so proved the verdict should be for plaintiff.

Plaintiff assigns error on the charge but is not in position to predicate error thereon. At the close thereof, when the court invited criticism or correction, plaintiff's counsel stated he had none to offer, and in the motion for a new trial the charge was in no respect challenged.

Nor can plaintiff claim that the verdict is without support or that he was entitled to a directed verdict or to judgment notwithstanding the verdict, for there was evidence from which the jury could find that some of the property mortgaged had disappeared; that all thereof had to be moved; that plaintiff was not caring for it; and that defendant in good faith deemed its security in jeopardy. The chattel mortgage contained this provision:

"If any attempt be made to remove, dispose of or injure such property, by the undersigned, or any person or persons, or if the mortgagee shall at any time, in good faith, deem said debt insecure, or fear diminution or waste of said property, then it shall be lawful for the mortgagee, his heirs, administrators or assigns, * * * to take immediate possession" and foreclose.

Many errors are assigned upon the rulings excluding or receiving evidence; but since none were specified in the motion for a new trial we have to go to the record and see whether or not exceptions

were taken at the time the court ruled. It is clear that no prejudicial error occurred when Dr. Sinclair was permitted to state that when he sold out to Dr. Lausted the latter gave a chattel mortgage to Dr. Sinclair for $1,500, which was assigned to defendant as collateral security to Dr. Sinclair's note of $750, and shortly thereafter, when Dr. Lausted sold to plaintiff, the present note and chattel mortgage were given by plaintiff as renewal or substitute for the Lausted mortgage and note; for plaintiff had so testified, and nothing new or contrary was brought out by the answer to the question objected to.

Properly admissible was the information defendant's president received from Dr. Sinclair in respect to the situation as to the disappearance of part of the mortgaged property and the danger of the removal of the balance from the dental office because of the nonpayment of the rent. Both Dr. Sinclair and defendant had common interests to protect.

Dr. Miner, who bid in the property at the chattel mortgage foreclosure sale, over objection, was permitted to testify as to its value. He was a dentist of some years' standing, was acquainted with the property, and had had some experience in buying like equipment. The sufficiency of the foundation to qualify a witness to testify as to the value of property is left so largely to the sound judgment of the trial court that its ruling will not be disturbed unless manifest abuse of judicial discretion is disclosed. Nothing of that sort appears in this record.

At one stage of the case defendant sought to show whether or not the property was protected against loss from fire; but after certain preliminary questions, to which plaintiff objected, defendant's counsel abandoned his purpose. Plainly there is nothing in this incident upon which to grant a new trial.

The court in addition to a general verdict requested the jury to answer this interrogatory: "What was the value of the property alleged to have been converted by the defendant bank?" The jury answered $2,000. Plaintiff makes the claim that this answer to the interrogatory is a special verdict in favor of plaintiff and de-

stroys the general verdict for defendant. We think not. To be sure, there appears no good reason for the interrogatory; for the court instructed the jury thus:

"Well, the court submitted to you a question which is to be answered regardless of what verdict you bring in. That question has no significance whatsoever in so far as your decision on the liability question is concerned. You will simply answer the question. You will simply find the value of the plaintiff's interest in the property and answer that question no matter which verdict you bring in, and don't let that enter into your consideration of the case in any way."

It is rather unfortunate that an interrogatory should be answered which the court deemed to have no bearing on the issues litigated, and further confused by the charge, which refers to the value of plaintiff's interest while the interrogatory calls for the value of the property. But it cannot be regarded as a special verdict upon a litigated material issue, for the court directly instructed the jury that the answer to the interrogatory was not to enter into its consideration of the case in any way.

Other assignments of error are not of sufficient importance to discuss.

The judgment must be affirmed.